**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ANTONIO R. SPENCER,          :
                                 :
     **Plaintiff,**            :
                                 :
**vs.**                           :   CIVIL ACTION NO. 15-0477-CG-B
                                 :
CAPTAIN D. FAILS, *et. al.*,    :
                                 :
     **Defendants.**        :

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Antonio R. Spencer, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on Defendant's Motion for Summary Judgment (Doc. 53). After careful review of the pleadings, and for the reasons set forth below, it is ordered that the motion be **GRANTED** in part and **DENIED** in part.

Spencer asserts claims against Captain D. Fails, Correctional Officer E. Duren, Officer Ezell, and Officer Madison for excessive force and failure to intervene; and against Drs. George Kouns and Hugh Hood for denial of medical treatment, in violation of the Eighth Amendment. In his complaint, Spencer alleges that while housed at Holman Correctional Facility ("Holman"), on the morning of

September 8, 2015, Defendants removed him from his dormitory bed, secured him in handcuffs behind his back, and escorted him to the main hall for questioning about an inmate-on-inmate attack. (Doc. 8 at 4-5). Spencer avers he had no knowledge of the inmate attack and was compliant. (*Id.* at 5). Following the inquiries, Captain Fails ordered that Spencer be taken to the healthcare unit for a body chart and then to the segregation unit for holding until an investigation regarding the inmate attack could be conducted. (*Id.*).

According to Spencer, he "immediately start[ed] protesting asking as to why [he] was being placed in segregation . . . and as to what charges because [he] didn't do anything to be place[d] in lock-up." (*Id.*). Spencer avers that Captain Fails replied, "I am the Captain I can do anything that I please to do, now take his ass to the infirmary to get a body-chart." (*Id.*). Spencer further alleges that he asked to speak to the warden, and that in response, Captain Fails and Officer Duren "slammed" him to the floor while he was restrained with handcuffs to the rear. (*Id.*). Spencer contends that Officer Duren proceeded to bend his left pinky finger backwards and ordered him to "shut the fuck-up" when he yelled out in pain. (*Id.* at 6). Spencer also alleges that Officer Duren

then dragged him to the infirmary despite his protests that he "[could] walk if given the opportunity." (*Id*. at 7).

Spencer avers that after receiving a body chart, he was charged with assault on an inmate and informed that he would be held in segregation for seventy-two (72) hours while the investigation of the inmate attack was completed.[1] (*Id*.). Spencer further alleges that he was escorted to the segregation shift office, where leg irons were placed on him in addition to the rear facing handcuffs, and that Captain Fails ordered that photographs be taken of him. (*Id*.). According to Spencer, he continued to protest that he "didn't assault nobody"[2] and Captain Fails threatened to use pepper spray on him if he continued to refuse to be photographed. (*Id*. at 7-8). Spencer asserts that when he again insisted on speaking with the warden about Captain Fails' "[u]njust[] mistreatment" and claims, Captain Fails got angry, became enraged, pulled out a chemical agency mace spray and "deliberately sprayed several burst[s] into my mouth and nostrils while I was in restraints handcuffed to the rear with leg irons restraints shackles on and I could not resist." (*Id*. at 8). Spencer further contends

---

[1] Spencer was ultimately found not guilty of the disciplinary charge of assaulting an inmate. (Doc. 8 at 10).

[2] Spencer claims Captain Fails stated, "I am going to spray your ass with this mace and we going to kick-your-ass-again [if you refuse to take the pictures]." (*Id*.).

that "[Captain Fails then] snatched my leg iron restraint shackles with such great force it cause[d] me to hit my head on the edge of the desk table busting my head on the floor where I was bleeding, Captain Fails and Officer E. Duren start[ed] choking and kicking me" and Captain Fails yelled, "when I tell you myself to do something you need to do it. Now go tell Warden Myers that mother-fucker." (*Id.* at 9). Spencer also claims that during the assault, Officers Madison and Ezell "looked on" and failed to intervene. (*Id.* at 8).

Following the assault, Spencer returned to the medical unit and was again examined by a nurse. (Doc. 42-2 at 14). The nurse noted a two-centimeter laceration on Spencer's head, cleaned the blood, and ordered daily wound cleaning until the laceration was healed. (*Id.*; Doc. 8 at 9; Doc. 30-1 at 11). Spencer was then released to the care of the officers and escorted to segregation. (Doc. 30-1 at 11).

Following the incident, Spencer submitted multiple sick call requests complaining of pain and damage to the pinky finger on his left hand, which he claims is from Officer Duren bending his finger backwards on September 8, 2015. (Doc. 30-1 at 12, 14, 21-22, 28, 35). The medical records reflect that Spencer was examined by the nursing staff and doctors at Holman, received x-ray scans, and

consulted with specialists regarding his finger. (*Id.* at 8, 15-20, 23, 24-32, 36-45). Spencer alleges that he cannot straighten his pinky finger; "it just sticks out straight" and that despite numerous requests, he has been denied surgical treatment to repair the damage and continues to suffer pain from the injury. (Doc. 12 at 4-8).

In this suit against Defendants Fails, Duren, Ezell, Madison, Kouns, and Hood, Spencer seeks injunctive [3] and monetary relief. (Doc. 8 at 14-15; Doc. 12 at 11). Defendants have answered and provided special reports, which include affidavits, medical records, incident reports, and photographs. (*See* Docs. 27, 30, 37, 41, 42). Spencer filed responses to Defendants' submissions. (Docs. 34, 43, 51). Upon review of Spencer's complaint, Defendants' answers and special reports, and Spencer's responses, the Court notified the parties' that Defendants' answers and special reports were being converted into a

---

[3] The law is settled that a § 1983 action filed by a prisoner seeking injunctive relief typically becomes moot if the prisoner is transferred or released from the facility where the cause of action arose. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (Plaintiff "was transferred to another facility shortly after his complaint was filed. . . . At that point, his claims for injunctive and declaratory relief relating to the conditions of his administrative segregation at the West Jefferson facility no longer presented a case or controversy.). A review of the record reveals that Spencer was transferred from Holman prison to Donaldson Correctional Facility on March 14, 2016 (Doc. 30 at 5) and that he is currently incarcerated at Limestone Correctional Facility (Doc. 58). Thus, his claims for injunctive relief are moot.

motion for summary judgment, and afforded the parties an opportunity to file any response and materials in support of or in opposition to the motion. (Doc. 53). Spencer filed a response in opposition to the motion. (Docs. 54). This motion is now ripe for consideration.

## I. Summary Judgment Standard.

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (bracketed text added)

(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

If the moving party does not have the burden of proof at trial, they may show that "there is an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citations omitted). Alternatively, the moving party may support its "motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* If the moving party meets this burden, the non-movant, as the party bearing the burden of proof at trial, must set forth specific facts, supported by citation to the evidence, to support the elements of the case at trial, and therefore, establish that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084

(11th Cir. 2003)). "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 U.S. Dist. LEXIS 90849, 2015 WL 4254561 at *1 (N.D. Ala. 2015). The Court is obligated to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dep't of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Public Education for Bibb County*, 495 F. 3d 1306, 1313 (11th Cir. 2007).

## II.  Immunity Defenses.

Spencer is proceeding against Defendants in their official and individual capacities, and Defendants have asserted applicable immunity defenses.  (Docs. 27, 37, 42).  With respect to Spencer's claims against the correctional officers in their official capacities, Defendants Fails, Duren, Ezell, and Madison are entitled to absolute immunity.  The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment."  *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).  "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Spencer alleges that Defendants Fails, Duren, Ezell and Madison, all of whom were employed by the State of Alabama Department of Corrections as officers at Holman at the time of the incident alleged in the complaint, violated his constitutional rights. It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment. *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); *Free*, 887 F.2d at 1557.

> Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for

> monetary damages are immune from suit under the
> Eleventh Amendment).

*Johnson v. Folks*, 2014 WL 524602 at *3-4, 2014 U.S. Dist. LEXIS 16027, 7-9 (S.D. Ala. Feb. 7, 2014) (quoting *Johnson v. Keaton*, 2008 WL 4493242 at *6, 2008 U.S. Dist. LEXIS 75356 (M.D. Ala. Sept. 29, 2008)).

No one disputes that the correctional Defendants were state officials at the time the action arose. As such, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. Therefore, Defendants Fails, Duren, Ezell, and Madison are entitled to absolute immunity from Plaintiff's claims asserted against them in their official capacities.

As to the defense of qualified immunity, which is applicable to defendants acting within their discretionary authority, *see Johnson v. Boyd*, 701 F. App'x 841, 847 (11th Cir. 2017), "officers [are protected] from liability in § 1983 actions as long 'as their conduct does not violate clearly established or constitutional rights of which a reasonable person would have known.'" *Wells v. Talton*, 695 F. App'x 439, 443 (11th Cir. 2017) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.

Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). A plaintiff may "show that a constitutional right was clearly established in three different ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Hill v. Orange Cty. Sheriff*, 666 F. App'x 836, 839 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d at 1291-1292)).

In this Eighth Amendment excessive force case, "'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Bowden v. Stokely*, 576 F. App'x 951, 954-955 (11th Cir. 2014) (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir.2002)). Therefore, if Spencer is able to establish his claim as laid out in his complaint, Defendants Fails, Duren, Ezell, and Madison cannot avail themselves of the protection of qualified immunity to defeat this action.

The Court also observes that, as private actors, medical Defendants Drs. Hood and Kouns are not entitled to either qualified or absolute immunity. *See Swann v. Southern Health Partners, Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the County to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."); *Hinson v. Edmond*, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician is ineligible to advance the defense of qualified immunity"); *Edwards v. Alabama Dep't of Corrs.*, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a private entity contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity...."). "With respect to absolute immunity, Defendants have cited no case, and the Court is aware of no case, extending absolute immunity to private actors providing medical services to state inmates." *Walker-El v. Naphcare Med. Servs.*, 432 F. Supp. 2d 1264, n. 3 (S.D. Ala. 2006).

**III. Discussion.**

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation

was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). The parties do not dispute that Defendants, employed as correctional officers for the State of Alabama or as contract employees for the State of Alabama, were acting under the color of state law at the time of the complained of incident. Thus, the Court must determine if Defendants have established that there are no genuine facts with respect to Spencer's Eighth Amendment claims.

### 1. Excessive Force Claims.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003); *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999)). The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers*, 475 U.S. 312, 319,

106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (some internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *Hudson v. McMillian*, 112 S. Ct. 995, 998, 503 U.S. 1, 5, 117 L. Ed. 2d 156 (1992) ('[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'") (citations omitted). "Therefore, the "Eighth Amendment prohibits prison officers from using excessive force against prisoners." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Thomas v. Bryant*, 614 F.3d 1288, 1303-04 (11th Cir. 2010)). Thus, "[t]he 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Pearson*, 665 F. App'x at 863 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (quoting *Hudson,* 503 U.S. at 7).

The Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically." *Pearson*, 665 F. App'x at 863 (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled*

*on other grounds as recognized by Randall v. Scott*, 610
F.3d 701, 709 (11th Cir. 2010)): "(1) the need for force;
(2) the relationship between that need and the amount of
force used; (3) the extent of the resulting injury; (4) the
extent of the threat to the safety of staff and inmates, as
reasonably perceived by the responsible official on the
basis of facts known to that official; and (5) any efforts
made to temper the severity of the use of force."[4] *Pearson*,
665 F. App'x at 863 (citations omitted).

In the present action, Defendants do not dispute that
force was used against Spencer. Rather, they submit that
the force used was "minimal, justified, and necessary" due
to Spencer's "insubordinate" and "aggressive" behavior.
(Doc. 42 at 1). In support of their assertions, Defendants
submitted sworn affidavits giving a different version of
the facts. On September 8, 2015, Spencer was placed in
handcuffs and escorted from his dormitory to the main hall.
(Doc. 42-3). Spencer was informed that he was going to be
placed in segregation pending an investigation for an

---

[4] "The Supreme Court has 'rejected the notion that "significant injury"
is a threshold requirement for stating an excessive force claim.'"
*Pearson*, 665 F. App'x at 863. "Thus, while *de minimis* uses of force,
absent exceptional circumstances, do not violate the constitution, *de
minimis* injury does not necessarily bar a prisoner's excessive-force
claim." *Id.* (citing *Wilkins v. Gaddy*, 559 U.S. at 37-38). "The extent
of injury remains a relevant consideration and may provide an
indication of the amount of force applied, but '[i]njury and force ...
are only imperfectly correlated, and it is the latter that ultimately
counts.'" *Id.*

assault on an inmate with a weapon. Spencer responded, "I didn't do nothing and I am not going to lock up." (*Id.*). He refused to be escorted to the healthcare unit and segregation, and started "pulling away from the officers." (*Id.*). According to Defendants, Spencer resisted the placement of leg irons by kicking the officers, and he refused to take photographs prior to his placement in segregation. (*Id.*). He "sat on the table and refused to move." (*Id.* at 2). As a result, Captain Fails administered a one second burst of a chemical agent, Sabre Red, to Spencer's facial area to gain compliance. (*Id.*).

Captain Fails denies choking, kicking, or using excessive force against Spencer. (*Id.*). Officer Duren avers that Spencer resisted having leg irons placed on him by kicking Officer Duren. (Doc. 42-4 at 1-2). Officer Duren further avers that he did not bend Spencer's finger backwards nor did he "do anything else to inmate Spencer that he is alleging." (*Id.* at 2). Officers Ezell and Madison affirm by affidavits that they did not witness any excessive force used in restraining Spencer on September 8, 2015. (Docs. 42-5; 42-6).

The formal prison reports prepared in response to the incident corroborate Defendants' version of the events and provide slightly more details regarding the unfolding of

the incident. (Doc. 42-2 at 2-4, 18). The Incident Report states that:

> On September 8, 2015, at approximately 4:50 AM, Correctional Lieutenant Victor Nieves received information that inmates Luther Glenn B/148373 and Antonio Spencer B/244156 were involved in a physical altercation around noon on September 7, 2015 and inmate Glenn was possibly injured. At approximately 5:00 AM, inmate Glenn was . . . treated for a small laceration on the left shoulder and superficial injuries to his back. Lieutenant Nieves questioned inmate Glenn about the incident and inmate Glenn state that "Tim" stabbed him in the back after a verbal altercation about a cellular phone. At approximately 5:10 AM, Lieutenant Nieves notified the On Call Duty Officer, Correctional Captain Darryl Fails, and reported the incident. At approximately 6:00 AM, inmate Spencer was located in C-Dorm. Inmate Spencer was placed in handcuffs restraints and escorted to the Main Hall. Captain Fails observed several blood stains on inmate Spencer white short pants. Captain Fails questioned inmate Spencer about the blood stains. Inmate Spencer stated, "I cut my finger on my left hand". Inmate Spencer state I didn't do anything and I am not going to lock up for nothing. Inmate Spencer began to struggle and kick at the officers on the main hall. Inmate Spencer was placed on the floor of the main hall and secured in leg irons restraints. Inmate Spencer was escorted to the Health Care Unit where he received a medical assessment and was escorted to Segregation. Inmate Spencer refused to take pictures and again refused to be escorted to a segregation cell. Captain Fails retrieved his canister of "Sabre Red" from his utility belt and administered a one second burst to inmate Spencer'[s] facial area. Inmate Spencer was placed in the shower in segregation for decontamination. Inmate Spencer remains in segregation pending investigation and Failure to Obey. Officer Duren received a small laceration to his right wrist from the leg iron due to inmate Spencer struggling on the floor. . . .

(Doc. 42-2 at 2). The Duty Officer Report prepared following the incident provides the same facts contained in the Incident Report. (Doc. 42-2 at 3). The statement taken of Correctional Officer Lieutenant Victor Nieves, a non-party to this action, reiterations the same facts but adds:

> Inmate Spencer became agitated and was not responding to the verbal orders to comply. Inmate Spencer was ordered several times to walk to the Health Care Unit and inmate Spencer refused to comply. . . . Inmate Spencer refused to comply with the photo taking and became combative with the Officers and had to be restrained and chemical spray had to be administered. . . . Lieutenant Nieves received a body chart. No injuries were noted.

(Doc. 42-2 at 4).

Subsequent to the incident, Warden Terry Raybon conducted an investigation into the force used against Spencer. (*See* Doc. 42-2 at 18). The *unsigned* Use of Force Investigative Report summarizes the same facts contained in the Incident Report as they relate to the force used and concludes the force used on Spencer was "justified" and "necessary. . . to get inmate Spencer escorted and to comply with the orders given." (*Id.*).

The first body chart Spencer received on September 8, 2015, at 6:30 a.m., reflects that the nurse observed an abrasion to Spencer's left medial wrist and a one-centimeter laceration to the pinky finger of his left hand.

(Doc. 56-2 at 15).  The medical record further reflects that Spencer reported to the examining nurse, "I was fixing to cut my sheet.  I had my razor upside down and it cut me."  (*Id.*).  No medical care was needed or provided at that time and Spencer was released from the healthcare unit at 6:45 a.m.  (*Id.*).

The second body chart Spencer received was at 7:55 p.m. on September 8, 2015, and reflects that Spencer stated to the nurse, "Captain Fails bumped my head."  (Doc. 56-2 at 14).  Spencer confirmed that the injury happened approximately 30-40 minutes earlier, and the nurse noted a two-centimeter laceration to the top of Spencer's head. The nurse controlled the bleeding and cleaned the wound.  (*Id.*; Doc. 30-1 at 11).

The record contains a third body chart for Spencer dated September 8, 2015, but it lacks a time stamp and notes only that Spencer refused an additional body chart. (Doc. 56-2 at 6).[5]

---

[5] The medical records also reveal that three of the officers were examined for injuries related to the incident that is the focus of this complaint:

(1) Officer Duren was examined at 6:50 a.m. for a "superficial abrasion" to his right wrist.  (Doc. 56-2 at 16). Officer Duren stated, "He was resisting and the handcuffs got me." (*Id.*).

(2) Officer Ezell received a body chart at 6:50 a.m., where red, tearing eyes and an abrasion to the right knee were observed.  Officer Ezell stated to the nurse, "I got sprayed" and complained of right hip pain.  (Doc. 56-2 at 17).

Defendants have also submitted photographs for the Court's review. The photographs depict different views of Spencer's body: (1) a view of Spencer's back; (2) a view of Spencer's upper shoulders and back; (3) a partial frontal view of Spencer being held by one officer; and (4) a view of Spencer's scalp. (Doc. 56-2 at 7-10).

As the moving party, Defendants bear the initial burden on summary judgment of "identifying those portions of 'the pleadings, . . . admissions on file, together with the affidavits, . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. In support of this motion for summary judgment, Defendants have submitted the aforementioned evidence to show the force used on September 8, 2015 against Spencer was necessary to keep or restore discipline.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant, Spencer, to show the existence of a genuine issue of material fact. *See Stabler v. Fla. Van Lines, Inc.*, 2012 WL 32660 at *5, 2012 U.S. Dist. LEXIS 1637 (S.D. Ala. Jan.

---

(3) Lieutenant Nieves was examined at 7:10 a.m. but no injuries were noted, and Lieutenant Nieves reported to the nurse, "I'm good." (Doc. 56-2 at 12).

6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).

> [P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.

*Id*. Additionally, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id*. at 254 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).

In an attempt to overcome summary judgment, Spencer reaffirms the allegations contained in his complaint and further:

> avers that he was in compliance from the moment he got out of bed and entered the main hall upon where [he] was immediately handcuffed without incident and continued respectful conduct as [he] continued to inform them all that 'I knew nothing about any stabbing with inmate Luther Glenn, AID#148373' and that's when Capt. Fails began his attack with CO Duren, Madison and Ezell maliciously and sadistically kicking, knocking and dragging and punching, choking Mr. Spencer to the floor busting Mr. Spencer's head wide open while handcuffed from the rear and shackled.

(Doc. 51 at 6-7).

The parties appear to agree that Spencer was compliant when he was initially handcuffed and taken from his cell, and that he became upset when advised that he was under investigation for stabbing another prisoner and would be placed in segregation for seventy-two (72) hours while the investigation was conducted. Indeed, while Spencer argues that he was fully compliant with Defendants during their questioning, he also acknowledges that he "immediately protested . . . being placed in segregation" pending an investigation of the incident "because [he] didn't do anything to be place[d] in lock-up." (Doc. 8 at 5). Spencer further avers that he insisted on speaking with the warden (multiple times) regarding his placement in segregation. Additionally, Spencer avers that after being ordered to be photographed in the shift office, he "advised Captain D. Fails that . . . [he] didn't assault nobody . . ." (Doc. 8 at 8).

Verbal demonstrations such as these, as well as the failure to follow an officer's orders, warrant the use of force in a prison setting. "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike." *West v. Sconyers*, 2010 WL 4822084 *7, 2010 U.S. Dist. LEXIS 123573

at *23 (M.D. Ala. Nov. 3, 2010); *see also Danley v. Allen*, 540 F.3d 1298, (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("[P]rison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders."); *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) ("Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.").

Moreover, an inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail." *West*, 2010 WL 4822084 at *7, 2010 U.S. Dist. LEXIS 123573 at *23. Consequently, any act of defiance permits the use of some force; however, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) (citations omitted). "The use of force must stop when the need for it to maintain or restore discipline no longer exists." *Id.* at 1304 (citations omitted). Thus, the central question here is

how much force was used, and whether it was reasonable under the circumstances.

### a.    Force Used in the Main Hall.

Spencer alleges Officer Duren gratuitously injured the pinky finger on his left hand.  Looking at the record, the Court finds the body charts from the date of the incident are completely devoid of any complaints related to Spencer's pinky finger and, instead, reflect only a small laceration to his left hand pinky finger which he attributed to an accidental razor cut.  (Doc. 42-2 at 15). The radiology report dated September 18, 2015 indicates no fracture, dislocation, or appreciable soft tissue swelling to Spencer's left hand pinky finger.  (Doc. 41-1 at 17). Additionally, Spencer's sworn statement provided (one day after the incident) as part of the Use of Force investigation also fails to mention that Officer Duren or anyone else pulled his finger backwards.  (Doc. 42-2 at 5). Spencer was examined at least three times by medical personnel at Holman for complaints of pain involving his pinky finger with an onset date of September 8, 2015, but it was not until November 13, 2015 that Spencer asserted to the medical personnel that his finger was bent backwards by an officer on September 8, 2015.  (Doc. 41-1 at 24). However, in Spencer's original complaint, filed under

penalty of perjury on September 21, 2015 (doc. 1 at 6-8), and in his affidavit in opposition to Defendants' summary judgment motion (doc. 51 at 28), he asserted that Officer Duren bent his finger backwards causing him to "yell out in pain." (*Id.*).

At this stage of the action, the undersigned is not permitted to weigh the evidence, but is instead obligated to draw all inferences in favor of the nonmovant, Spencer, including his self-serving affidavit. *United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) ("We hold that an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated."). Consequently, the undersigned determines that while Spencer's claim is highly questionable in light of the medical records and Use of Force Investigation form that was completed in close proximity to the alleged incident, Spencer's sworn assertions suffice to create a genuine issue of material fact as to whether or not Officer Duren used excessive force against him by bending his pinky finger backward on September 8, 2015. Accordingly, summary judgment should be DENIED at this time as to this claim.

### b. Force Used in the Segregation Office.

Spencer also claims that Defendants are liable for unconstitutional uses of force for slamming him to the ground, busting his head on a desk, kicking and choking him all while he was shackled. Again, the undersigned determines that Spencer has carried his burden of establishing that a genuine issue of material fact exists as to whether or not he was assaulted in the segregation shift office by Defendants.

Defendants maintain that "Spencer sat on the table refused to move" and Captain Fails "administered a once[sic] second burst of chemical agent to inmate Spencer facial area. No other force was used." (Doc. 42-3 at 2). This narrative denotes that a reasonable amount of force was used to restore order and induce compliance. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008)(holding in context of pretrial detainee's excessive force claim that the use of "pepper spray is an accepted non-lethal means of controlling unruly inmates" and that "[a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders.") *Soto v. Dickey*, 744 F.2d 1260, 1270-71 (7th Cir. 1984) (upholding the use of mace in a prisoner's cell because he refused to be handcuffed), *cert. denied*,

470 U.S. 1085, 105 S. Ct. 1846, 85 L. Ed. 2d 144 (1985); *Clemmons v. Greggs*, 509 F.2d 1338, 1340 (5th Cir. 1975) (ruling that there was no constitutional violation when mace was used during a disturbance because there was no intent to punish), *cert. denied*, 423 U.S. 946, 96 S. Ct. 360, 46 L. Ed. 2d 280 (1975); *Geas v. DuBois*, 868 F. Supp. 19, 24 (D. Mass. 1994) (ruling that "'the use of non-dangerous quantities of [a chemical agent] in order to prevent a perceived future danger does not' generally overstep constitutional parameters.").

However, the medical records reflect that Spencer suffered a cut to his head, as alleged in the complaint, and Defendants offer no explanation for this injury. The records also reflect that two of the defendants sustained minor injuries during the process of transferring Spencer to a segregation cell, likely in the segregation office given the time stamps of their body charts. A reasonable fact finder could conclude that these injuries were sustained while attempting to restrain Spencer as argued by Defendants or view the injuries as evidence supporting Spencer's version of the event.

Similarly, the photographic evidence is inconclusive as to the amount of force used. It is impossible to detect the extent of the alleged injuries from the scanned, black

and white images.  Indeed, one photograph clearly depicts a distressed Spencer.  (Doc. 56-2 at 8).  However, whether this picture evidences resistance to the officers' orders or pain from an assault is indeterminable.  It is also impossible to establish from the photographs whether or not there are markings or redness on Spencer's body to evidence the alleged assault.  As such, reasonable fact finders could disagree as to the amount of force used, the severity of the threat posed, and the efforts made to temper the response.  Additionally, there remains a question of fact as to whether or not the force was applied maliciously or sadistically to cause harm as Spencer alleges,[6] or in an attempt to restrain Spenser as argued by Defendants. Accordingly, summary judgment on this claim should be DENIED at this time.

## 2.  Failure to Intervene Claims.

In addition to the excessive force claims, Spencer also alleges that Officers Bryan Ezell and Antywon Madison failed to intervene and stop the excessive force used by Captain Fails and Officer Duren on September 8, 2015.

The Eighth Amendment is only violated by "[a] prison official's 'deliberate indifference' to a substantial risk

---

[6] As noted, Spencer contends that Captain Fails became upset because he insisted on speaking with the warden, and that the correctional Defendants maliciously and sadistically kicked, punched and choked him. (Docs. (Doc. 51 at 6-7).

of serious harm to an inmate [.]" *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Prison officers may be held liable under § 1983 if "they fail or refuse to intervene when a constitutional violation occurs in their presence"; however, for this liability to attach, the officer in question "must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010)(citing *Ensley v. Soper*, 142 F. 3d 1402, 1407 (11th Cir. 1998)). Thus, Spencer bears the burden of demonstrating first that excessive for was used in violation of the Eighth Amendment and that Defendants were "physically able and had a realistic chance to intervene and act in time to protect the inmate plaintiff."

As noted *supra*, Defendants deny that any excessive force was used against Spencer. Defendant Madison declares he "did not witness any excessive force used on [Spencer] while he was being restrained." (Doc. 42-6). Defendant Ezell also avers that he "did not see any excessive force being used in restraining of inmate Spencer." (Doc. 42-5). Yet, in his sworn affidavit, Spencer alleges that Defendants Ezell and Madison watched as Captain Fails and Officer Duren "slammed" him to the ground while handcuffed, "bust[ed] his head open on [the] desk", and pulled his finger backwards. (Doc. 54 at 8).

As previously discussed, there remains a question of material fact as to whether Defendants exercised excessive force on Spencer as alleged. The law is clear, at the summary judgment stage, it is not the function of the reviewing court to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252. Where a fact is disputed, the nonmovant's version of the fact is presumed to be true. *Skop v. City of Atlanta*, 485 F.3d 1130, 1139-40 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.")); *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.")(citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)). Accordingly, Spencer has presented evidence of a factual dispute that

may only be determined by a trier of fact. Thus, summary judgment must be DENIED at this time.

### 3. Inadequate Medical Care Claims.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)); *see also Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1972) (Eighth Amendment is applicable to the states through the Fourteenth Amendment). In order to prevail on his Eighth Amendment claim, Spencer must make both an objective and a subjective showing. In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two
> components, an objective component, which
> inquires whether the alleged wrongdoing was
> objectively harmful enough to establish a
> constitutional violation, and a subjective
> component, which inquires whether the officials
> acted with a sufficiently culpable state of mind.

25 F.3d at 983; *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Thus, Spencer must prove that there was "a substantial risk of serious harm," that

Defendants Kouns and Hood were subjectively deliberately indifferent to that risk, and causation. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995); *see also Farmer v. Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

> For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). A medical need may be considered serious if a delay in treating it makes it worse. *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and internal quotations omitted).

*Palazon v. Sec'y for the Dep't of Corr.*, 361 F. App'x. 88, 89 (11th Cir. 2010).

For the sake of this analysis, the undersigned will assume, without deciding, that Spencer's inability to bend the pinky finger on his left hand and the symptomatic pain constitutes a serious medical need. Turning to the second element, it is undisputed that Spencer required medical attention while at Holman. However, Defendants contend, and the record supports, that Spencer did receive medical care while incarcerated. *Cf., Waldrop v. Evans*, 871 F.2d

1030, 1035 (11th Cir. 1989) (When an inmate has received medical care, courts are reluctant to find deliberate indifference.).

Defendants present evidence that Spencer was brought to the healthcare unit on September 8, 2015, and he informed the nurse that he inadvertently cut himself with his razor. The nurse noted an "abrasion to left medial wrist, 1 cm laceration to fifth finger left palmar aspect . . . ." (Doc. 30-1 at 8). Spencer returned to the healthcare unit that same evening, but did not voice complaints regarding his finger. (*Id.* at 9, 11).

Spencer again returned to the healthcare unit on September 13, 2015, complaining that his pinky finger on his left hand had been hurting since September 8, 2015. (*Id.* at 15). The examination showed he was unable to flex his hand. (*Id.*). On September 18, 2015, an x-ray was taken of Spencer's left hand and revealed unremarkable findings, specifically no fracture, dislocation, or soft tissue swelling. (*Id.* at 16).

Spencer was examined in the healthcare unit on October 19, 2015, with complaints that he was unable to bend his left pinky finger. The nurse noted "patient is able to grip with both hands just unable to bend fifth digit left hand. Left hand grip is weaker than right." It was

recommended that Spencer's finger be splinted and that a trial of steroids be administered. (*Id*. at 19-20).

On November 13, 2015, Spencer returned to the healthcare unit, complaining that he could not move his left pinky finger and, for the first time, stated that his finger was bent backwards. (*Id*. at 23). Spencer was seen again on November 25, 2015 and it was noted that his left pinky finger was swollen and bruised but neurovascularly intact. Spencer was diagnosed with a sprain to his left pinky finger and prescribed steroids. (*Id*. at 24).

On February 11, 2016, Spencer was examined by Dr. Stone, and he informed her that his pinky finger had been hyper extended during an altercation on September 8, 2015. (*Id*. at 25). Due to Spencer's ongoing complaints, he was referred to Dr. G. Corbett, an orthopedist, who he saw on March 3, 2016.

Dr. Corbett diagnosed Spencer with having a chronic tendon disruption. (*Id*. at 29). Dr. Corbett recommended repair if the patient desired or "benign neglect." (*Id*.). Dr. Corbett's medical chart stated "Flexor tendon repair – possible staged procedure." (*Id*.). Upon Spencer's return to Holman from his consultation with Dr. Corbett, he informed the admitting nurse that Dr. Corbett said, "I may need surgery." (*Id*. at 30).

Spencer was transferred from Holman to Donaldson Correctional Facility on March 14, 2016. (*Id.* at 32-35). The Holman medical director made an appointment for Spencer to be seen by Dr. Ostrowski, an orthopedist surgeon, specializing in hand surgery, at Brookwood Hospital. (*Id.* at 38). Spencer was examined by Dr. Ostrowski on April 14, 2016. Dr. Ostrowski noted:

> Can't flex left small finger laceration – 6 months ago. . . . Here for evaluation. Can't passively bend left small finger. . . . Explained that under the best of circumstances this is a very difficult situation to improve, . . . 2-3 surgeries with extensive OT needed. Just not practical in his situation. Would be difficult even if he were not in jail.

(*Id.*). Dr. Ostrowski accessed that the "old flexor laceration left small finger [was] not repairable" and recommended that no follow up care was necessary. (*Id.*). Upon returning to the prison, Spencer stated to the intake nurse that "nothing" happened at the consult with Dr. Ostrowski.[7] (*Id.* at 39).

After a review of the record, the undersigned determines that Spencer was examined upon every sick call request and received ample medical care, including x-ray

---

[7] Physical therapy was thereafter arranged for Spencer, and he was prescribed Tylenol for pain. (Doc. 30-1 at 40, 42-43). The physical therapist consulted with Spencer and assessed that if surgical repair was attempted that he could make himself available three times a week following the surgery to encourage surgical success. (*Id.* at 45).

scans and examinations by two outside orthopedic specialists. There is no evidence that Spencer was ever denied or refused medical treatment, and the record is completely devoid of evidence that the defendants knew of a risk of harm to Spencer and acted to disregard that risk. Instead, Spencer's claim centers on his demand for surgical intervention and the denial of the same

The law is clear that a difference of opinion between Spencer and the defendants as to the appropriate course of treatment does not amount to deliberate indifference and does not give rise to a claim under § 1983. *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991) (As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim); *see also Adams*, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983"); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (evidence showed prisoner received significant medical care in jail and although he may have desired different treatment "the care the jail provided did

not amount to deliberate indifference"), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986).

Under these circumstances, the course of treatment provided by Defendants did not violate Spencer's constitutional rights. The medical care Spencer received was not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). The medical records document that neither of the specialists prescribed surgical repair. Although surgical intervention was presented as an option, neither specialist opined that it was necessary. Dr. Corbett concluded that surgical repair was a possibility and that benign neglect was also an option. Dr. Ostrowski concluded that even under the best of circumstances, Spencer's injury was difficult to repair and he did not recommended surgery. Accordingly, there is no evidence in the record that Defendants acted with deliberate indifference in providing Spencer medical care or in denying him surgery.

In light of the forgoing, the undersigned finds the claims against Defendant Dr. Kouns and Dr. Hood are due to be dismissed, and summary judgment should be GRANTED in favor of Dr. Kouns and Dr. Hood.

**4.  State Law Assault Claims.**

Spencer brings the state law claim of assault and battery against Captain Fails and Officer Duren. (Doc. 8 at 12). Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers. *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998). The first is absolute "state-agent" immunity, which is afforded to certain state constitutional officers. *Id.* ("[A]bsolute 'sovereign' immunity . . . [is] afforded to certain state constitutional officers, including sheriffs and deputy sheriffs.") (citing *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996) and Art. I, Sect. 14 of the Ala. Const. of 1901)). The second type of immunity, described as "discretionary function" immunity, is not absolute and applies when a state officer or employee commits a tort while engaged in the exercise of a discretionary function. *Taylor v. Shoemaker*, 605 So. 2d 828, 831 (Ala. 1992) (citing *Sellers v. Thompson*, 452 So.2d 460 (Ala. 1984)).

The relevant Alabama statute establishing discretionary function immunity is Ala. Code § 6-5-338(a) (1975), which reads:

> Every peace officer...who is employed or
> appointed pursuant to the Constitution or
> statutes of this state, whether appointed or

employed as such peace officer by the state or a
county or municipality thereof...shall at all
times be deemed to be officers of this state, and
as such shall have immunity from tort liability
arising out of his or her conduct in performance
of any discretionary function within the line and
scope of his or her law enforcement duties.

Under the discretionary function immunity analysis,
the court must first determine if Defendants were
performing a discretionary function when the alleged wrong
occurred. *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir.
2003). Discretionary acts are "those acts as to which
there is no hard and fast rule as to the course of conduct
that one must or must not take and those acts requiring
exercise in judgment and choice and involving what is just
and proper under the circumstances." *Id.* at 883; *see also*
*L.S.B. v. Howard*, 659 So. 2d 43, 44 (Ala. 1995). If the
court finds that Defendants were performing a discretionary
function, then the burden shifts to Spencer to demonstrate
that the defendants acted in "bad faith, with malice or
willfulness." *See Wood*, 323 F.3d at 883; *see also Sheth*,
145 F.3d at 1238-1239. "Acts of such a nature are not
considered to be discretionary." *Wright v. Wynn*, 682 So.
2d 1, 2 (Ala. 1996).

The parties do not dispute, and the undersigned finds
that Defendants' acts of questioning Spencer and placing
him in segregation were discretionary acts for immunity

purposes. Therefore, the burden now shifts to Spencer to prove Defendants acted in bad faith, with malice or willfulness in using force against him. *See Wood*, 323 F.3d at 883.

As previously discussed, there remains a genuine issue of material fact as to whether or not the force used by the correctional Defendants was applied maliciously or sadistically to cause harm. As noted, Spencer claims that Fails and Duren maliciously and sadistically kicked, punched, and choked him. (Doc. 51 at 6-7). These same allegations suffice to create a genuine issue of material fact as to whether Defendants' use of force was "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith." *See Ex parte City of Tuskegee*, 932 So. 2d 895, 904 (Ala. 2005); *see also Ex parte City of Gadsden*, 781 So. 2d 936, 938 (Ala. 2000). Accordingly, Defendants' motion for summary judgment is DENIED as to Spencer's state law assault claims against Defendants Fails and Duren.

## IV. Conclusion.

Plaintiff Antonio Spencer has failed to establish an Eighth Amendment deliberate indifference to medical care claim against Defendants Drs. George S. Kouns and Hugh Hood. Accordingly, the undersigned recommends that summary

judgment be **GRANTED** in their favor on this claim, and that Plaintiff Spencer's claim against them be **DISMISSED** with prejudice.

Additionally, the undersigned concludes that there remain genuine issues of material fact regarding Spencer's Eighth Amendment excessive force and failure to intervene claims against Defendants Captain Fails and Officers Duren, Ezell, and Madison. Accordingly, it is recommended that Defendants Fails, Duren, Ezell, and Madison's motion for summary judgment be **DENIED** at this time.

It is further recommended that a scheduling conference conducted to address the remaining claims.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72(c). The parties should

note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **26th** day of **June, 2018**.

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
